RECEIVED
IN ALEXANDRIA, LA
SEP 15 2009
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| KENNETH OWENS,<br>    Plaintiff | CIVIL ACTION<br>SECTION "P"<br>NO. CV08-0768-A |
| VERSUS | |
| RICHARD L. STALDER<br>    Defendant | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

### REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a motion for summary judgment filed by the defendant (Doc. 7).

Plaintiff Kenneth Owens ("Owens") filed a civil rights complaint on May 30, 2008, pursuant to 42 U.S.C. § 1983. The sole named defendant is Richard L. Stalder ("Stalder"), the Secretary of the Louisiana Department of Public Safety and Corrections ("DPSC"), who is sued in his individual capacity only. Owens contends the DPSC miscalculated his good time credits, which resulted in Owens' confinement for three years beyond his release date. Owens contends he was falsely imprisoned, resulting in severe mental pain and suffering, physical injury, and financial loss. Owens contends Stalder is liable to him for failing to enforce reasonable policies related to assuring that sentence calculations are carried out in compliance with Louisiana law and DPSC policy, and for failing to train his employees properly. Owens also alleges supplemental

state law claims, under both direct and vicarious liability, for false imprisonment, abuse of process, intentional infliction of emotional distress, and negligence. Owens asks for a jury trial and for relief in the form of general, special, and punitive damages, as well as costs, attorney fees, and legal interest.

## Facts and Procedural History

Owens alleges in his complaint that, on January 4, 1989, he was sentenced to serve a twenty-one year sentence with the DPSC as a second felony offender, to run consecutively with a nine year sentence imposed on the same date. Owens further alleges that, on September 10, 2004, he filed a habeas petition, seeking immediate release due to miscalculation of his good time credits. Owens contends the DPSC applied the incorrect statute and allowed him only fifteen days of good time for every thirty days served in prison, instead of thirty days of good time for every thirty days served ("double good time credit"). On June 8, 2007, a state court of appeal granted Owens' habeas petition, finding his sentence had been miscalculated by the DPSC and he should have been released on January 4, 2004. Owens was released on June 14, 2007. Owens v. Stalder, 965 So.2d 886 (La. App. 1st Cir. 2007).[1]

---

[1] In Owens v. Stalder, 965 So.2d at 887-889, the court reasoned,
"Owens claims that after passage of Act 138, he was offered the opportunity to choose double good time credit under its provisions. See LSA-R.S. 15:571.3. On August 24, 1992, he refused to sign the 'Double Good Time Option and Approval Form' presented to him, alleging his credit should be computed retroactively to

2

his original sentencing date, rather than prospectively from January 1, 1992. He claims that he was later informed that his double good time credit would be calculated as of the date when he was first sentenced. However, in 1997, he was again given the opportunity to select thirty days of good time credit for every thirty days served, under the provisions of LSA-R.S. 15:571.3, and he signed an approval form that stated he was eligible to receive good time credit at that rate, effective January 5, 1997.

"Before filing his petition in the district court, Owens presented his complaint to the DPSC by initiating a Corrections Administrative Remedy Procedure (CARP). His complaint was investigated, and his request for re-computation of his good time credit was rejected at each level of that procedure. Having exhausted his administrative remedies, Owens filed his petition in the district court. His claim and the evidence submitted in connection with it were evaluated by a commissioner, who recommended to the district court judge that the final agency decision of DPSC be affirmed and that Owens' request for judicial review be dismissed with prejudice at his cost. Owens timely filed a traversal of this recommendation. On September 8, 2005, the district court judge signed a judgment affirming the DPSC decision as neither arbitrary, capricious, manifestly erroneous, nor in violation of any of Owens' constitutional or statutory rights. His petition was dismissed, with prejudice, at his cost. This appeal followed.

      *    *    *

"The commissioner's recommendation to the district court indicates that he reviewed the record of the CARP procedure conducted by DPSC in reaching his conclusion that the DPSC decision was correct. The commissioner observed that the CARP second step response form stated that Owens had rejected double good time eligibility on August 24, 1992, and that Owens had acknowledged this at the initial hearing in the matter. We note that Owens also provided this information in his original pleading in the district court. The commissioner further stated that the DPSC regulations provided that an inmate could not be deemed eligible for double good time credit until he signed an approval form. Since Owens did not sign such a form until January 17, 1997, the commissioner concluded that DPSC did not err in deeming him eligible to earn double good time only from January 5, 1997, rather than from his initial sentencing date of January 4, 1989. Therefore, according to the commissioner, the computation of his good time credit at the rate of only fifteen days for every thirty days served from his sentencing date of January 4, 1989, until January 5, 1997, and at thirty days for every thirty days served after that date, was correct. The

3

## Law and Analysis

### The Law of Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that a summary judgment:

> "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, [submitted concerning the motion for summary judgment], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts

---

district court judgment reflects this conclusion.

\* \* \*

"Our decision in this case is controlled by Cox. Even though DPSC regulations may have required Owens to sign an approval form in order to be eligible for double good time credits, DPSC presented no evidence that it ever offered Owens the opportunity to sign a form that stated and recognized the correct effective date. And just as in the Cox case, Owens' right cannot be limited by his signature on an approval form reflecting the application of a subsequent amendment to the statute and providing a later effective date for his double good time credit. Therefore, the judgment of the district court constituted legal error and must be reversed." [Footnotes omitted.]

4

submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material". A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. In this analysis, we review the facts and draw all inferences most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment. Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th

Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82(1992).

Stalder's Liability

Owens contends Stalder is liable to him in his individual capacity, both directly and vicariously, and under both federal and state law. Stalder argues in his motion for summary judgment that he is not individually liable to Owens and that he is entitled to qualified immunity.[2] Owens has named Stalder as the defendant in this case, as supervisor of the Louisiana Department of Public Safety and Corrections ("DPSC") employees who were responsible for the correct computation of his sentence and good time credits.

1.

The defense of qualified immunity protects a public official from both litigation and liability, absent a showing that the official violated a constitutional right that was clearly established at the time of the incident. Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995), cert. den., 516 U.S. 1084, 116 S.Ct. 800 (1996). Invocation of the qualified immunity defense shifts the burdens of proof in federal civil rights lawsuits brought against public officials for actions or omissions attending their performance of official duties:

> "The defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority. Once the defendant has

---

[2] Since these defenses deal only with the Section 1983 claims against Stalder, the state law claims will not be discussed herein.

6

done so, the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law."

Bazan v. Hidalgo County, 246 F.3d 481, 489 (5th Cir. 2001), citing Salas v. Carpenter, 980 F.2d 299, 306 (5th Cir. 1992).

The bifurcated test for qualified immunity is: (1) whether the plaintiff has alleged a violation of a clearly established constitutional rights; and, (2) if so, whether the defendant's conduct was objectively unreasonable in the light of the clearly established law at the time of the incident. Hare v. City of Corinth, 135 F.3d 320, 325 (5th Cir. 1998), and cases cited therein.

The first step is to determine whether the plaintiff has alleged violation of a clearly established constitutional right. This analysis is made under the currently applicable constitutional standards. Hare, 135 F.3d at 325. A constitutional right is clearly established if, in light of pre-existing law, the unlawfulness is apparent. Officials must observe general, well-developed legal principles. Doe v. Taylor Independent School Dist., 15 F.3d 443, 445 (5th Cir.), cert. den., 513 U.S. 815, 115 S.Ct. 70 (1994).

The second prong of the qualified immunity test is better understood as two separate inquiries: (1) whether the allegedly violated constitutional rights were clearly established at the time of the incident and, if so, (2) whether the conduct of the defendants was objectively unreasonable in the light of that then

7

clearly established law. Hare, 135 F.3d at 325-36. Objective reasonableness is a question of law for the court. The analysis for objective reasonableness is different from that for deliberate indifference (the subjective test for addressing the merits). For qualified immunity, the subjective deliberate indifference standard serves only to demonstrate the clearly established law in effect at the time of the incident and, under that standard (the minimum standard not to be deliberately indifferent), the actions of the individual defendants are examined to determine whether, as a matter of law, they were objectively unreasonable. Hare, 135 F.3d at 328.

The qualified immunity doctrine does not protect an official whose subjective intent was to harm the plaintiff, regardless of the objective state of the law at the time of his conduct. Douthit v. Jones, 619 F.2d 527, 533 (5th Cir. 1980). A party seeking to avoid a qualified immunity defense must prove that the official either actually intended to do harm to him, or took an action which, although not intended to do harm, was so likely to produce injury that the harm can be characterized as substantially certain to result. Douthit, 619 F.2d at 533.

The qualified immunity defense involves a shifting burden of proof. The defendant official must initially plead his food faith and establish that he was acting within the scope of his discretionary authority. Once the defendant has done so, the

burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law. The Fifth Circuit does not require that an official demonstrate that he did not violate clearly established federal rights; that burden is upon plaintiffs. If a plaintiff states a valid claim, the plaintiff bears the burden of demonstrating the defendant's actions violated clearly established law. Salas v. Carpenter, 980 F.2d 299, 306 (5th Cir. 1992), and cases cited therein.

2.

In the case at bar, Owens has alleged the violation of a clearly established constitutional right under the Fourth Amendment to not be falsely imprisoned/illegally detained past his release date. This right was clearly established at the time Owens was due to be released in 2004. See Whirl v. Kern, 407 F.2d 781 (5th Cir. 1968), cert. den., 396 U.S. 901. 90 S.Ct. 210 (1969); Sanders v. Foti, 281 F.3d 1279 (5th Cir. 2001), citing Sanders v. English, 950 F.2d 1152, 1159 (5th Cir. 1992).

Owens contends that Stalder was in charge of the DPSC policies, procedures, customs, and practices, including those dealing with the calculation of inmates' release dates, the calculation of good time credits, and the interpretation of statutory and case law related to those calculations, citing La.R.S. 36:403 (the Secretary of the Department of Public Safety

and Corrections has "the responsibility for the policies of the department except as otherwise provided by this Title, and for the administration, control, and operation of the functions, programs, and affairs of the department"). Owens also alleges Stalder failed to properly train his employees in the correct calculation of sentences and good time credits.

The doctrine of respondeat superior, which makes an employer or supervisor liable for an employee's alleged tort, is unavailable in suits under 42 U.S.C. §1983. Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987). Well settled §1983 jurisprudence establishes that supervisory officials cannot be held vicariously liable for their subordinates' actions. Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injury. Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992), cert. den., 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993); Thompkins, 828 F.2d at 303. Although Stalder contends that Section 1983 does not admit individual capacity claims for failure to supervise and train, that statement is incorrect.[3] See Doe v. Taylor Independent School Dist., 15 F.3d 443, 453 (5th Cir.), cert. den., 513 U.S. 815, 115 S.Ct. 70 (1994)(With regard to a cause of

---

[3] That is not a holding in, or stated in, Burge v. Parish of St. Tammany, 187 F.3d 452 (5th Cir. 1999).

10

action for "failure to train", assessing an individual supervisor's liability under §1983 depends on a showing of (1) a "deliberately indifferent" policy of training that (2) was the "closely related" cause of the violation of the plaintiff's federally protected rights.).

Owens alleges that Stalder acted with deliberate indifference to Owens' constitutional, civil, and statutory rights, as well as Owens' life and safety. Owens asks this court to consider Sanders v. Foti, 281 F.3d 1279, *1 (5th Cir. 2001)(allegations that inmate was detained past the release date alleges a claim of false imprisonment which may be raised under the Fourth Amendment, and adequately stated a claim against Stalder for supervisory liability as decision-maker for the DPSC), and Cox v. Whitley, 612 So.2d 158 (La. 1st Cir. 1992), writ den., 613 So.2d 1001 (La. 1993) (inmate sentenced on or after July 1, 1982, has a vested right in double good time retroactive to August 30, 1986, pursuant to R.S. 15:571.14). Owens also cites a DPSC internal memorandum dated October 4, 2006, which according to Owens, states that under Cox inmates such as Owens are entitled to earn double good time credit. That memo is not in the record before this court.

Stalder contends he is not liable because he was not personally involved in the computation of Owens' release date. The only evidence submitted by Stalder in support of his motion for summary judgment is a two-sentence statement of undisputed material

facts which does not bear on the issue of liability (Doc. 9). However, as alleged by Owens, after the decision in Cox v. Whitley, 612 So.2d 158 (La. 1st Cir. 1992), writ den., 613 So.2d 1001 (La. 1993), Stalder had reason to know that good time credits were not being properly calculated by his employees. There is also the alleged missing DPSC internal memo to consider. It is also noted that, under the Louisiana Administrative Remedy Procedures, the Second Step is an appeal directly to the Secretary of the Department of Public Safety and Corrections. The final decision is made by the Secretary, then the inmate is notified and a copy of the Secretary's decision is sent to the warden. LAC 22:I.325(G)(1), (2); La.R.S. 15:1172. The fact that Owens exhausted his administrative procedures prior to filing his suit in state court suggests that Stalder was aware of Owens' complaint and involved in his sentence and good time credit calculations. Therefore, Stalder's unsupported and unverified statement that he was not personally involved in the computation of Owens' release date does not suffice to support a summary judgment in his favor.

This court cannot determine on the evidence before it whether Stalder's actions, inactions, policies, or customs were objectively unreasonable under the circumstances. Stalder has not pleaded his good faith, nor has he shown that he was acting within the scope of his discretionary authority. Stalder has not submitted any summary judgment evidence, such as affidavits or other evidence as required

by law, to prove he is entitled to qualified immunity or that he is not otherwise liable to Owens. *Unsupported allegations are insufficient to either support or defeat a motion for summary judgment.* McCallum Highlands, Ltd. v. Washington Capital Dus, Inc., 66 F.3d 89, 92 (5th Cir. 1995), op. revised in other part, 70 F.3d 26 (5th Cir. 1995), citing Galindo v. Precision American Corp., 754 F.2d 1212, 1216 (5th Cir. 1985). Also, Newkirk v. Keyes Offshore, Inc., 782 F.2d 499, 502 (5th Cir. 1986).

Since Stalder has not carried his burden of identifying those portions of the record which he believes demonstrate the absence of a genuine issue of material fact on the issues of qualified immunity and his liability to Owens, Stalder is not entitled to a summary judgment in his favor and his motion for summary judgment should be denied.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Stalder's motion for summary judgment (Doc. 9) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District

Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 15th day of September, 2009.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE